[No. 6985.  Decided March 30, 1908.]

Joseph M. Vallentine *et al.*, *Appellants*, v. Thomas H. Carter *et al.*, *Respondents.*[1]

Specific Performance—Evidence—Sufficiency — Principal and Agent—Authority of Agent—Ratification.  Specific performance of a contract to convey land cannot be decreed where it appears that the same was made by agents of a nonresident owner who at the time had no authority to sell or offer the same for sale; that the terms of the. contract, which was subject to the owner's approval, gave the vendees thirty days within which to close the deal after the title was made good, but this and other terms were never disclosed to the owner or approved by him; that the owner by telegraph finally authorized a sale at the price fixed, providing "$15,000 be paid down," and executed deeds and approved securities to close the sale; that after some delay the agents of the owners notified the vendees that the sale must be closed within a certain time (less than thirty days from the time title was made good), which demand was acquiesced in by the vendees' agent at the time, but was not complied with, whereupon the deeds were returned to and destroyed by the owner, who refused to complete the sale; since the contract relied upon was never approved or ratified by the owner, who made his own contract which was terminated on failure to complete the same on time.

Same—Ratification.  The fact that, after suit brought, the owner learned of the agent's contract and that $500 earnest money had been paid to his agents, would not require him to return the money or constitute a ratification of the sale, where he had not received any of the money, and return thereof had never been demanded.

Appeal from a judgment of the superior court for King county, Yakey, J., entered May 23, 1907, upon granting a nonsuit at the close of plaintiff's case, dismissing an action for specific performance.  Affirmed.

*Alexander & Bundy,* for appellants.

*Edward Brady,* for respondents.

[1]Reported in 94 Pac. 932.

Mount, J.—This is an action for specific performance of an alleged contract. At the trial, after the plaintiffs had introduced their evidence, the trial court granted a nonsuit upon motion of the defendants, and entered a judgment of dismissal. The plaintiffs appeal.

The complaint alleges that, on May 29, 1906, the respondents were the owners of lots 5 and 8, in block 55, of C. C. Terry's addition to Seattle; that the Pioneer Rent & Collection Company, a corporation, was respondents' agent for the sale of this property; that Edwin F. James & Company, a corporation, was the agent of the appellants for the purchase of the property; that on May 29, 1906, the respondents, acting through their agent the Pioneer Rent & Collection Company, and the appellants, acting through their agent Edwin James & Company, entered into a contract, which we set out, as follows:

"Seattle, Wash., May 29, 1906.

"Received of Edwin F. James & Co., hereinafter mentioned as the purchaser, the sum of five hundred dollars ($500) as earnest money and in part payment for the purchase of certain real estate situate in King county, state of Washington, and particularly described as follows, to-wit: Lots five (5) and eight (8) in block fifty-five (55) of C. C. Terry's First Addition to the City of Seattle, Wn., together with any and all improvements thereon, which we have this day sold to the said purchaser for the sum of thirty-five thousand dollars ($35,000) on the following terms, to-wit: Five hundred dollars ($500) as hereinabove receipted for, seventeen thousand dollars on or before June 30, 1906, six thousand five hundred dollars on or before three (3) years at 6 per cent int., payable semi-annually, on lot five (5), and eleven thousand dollars on or before three (3) years at 6 per cent int., payable semi-annually, on lot eight (8). Rents and interest on mortgages, if any, are to be apportioned from date deed is delivered. The risk of loss or damage to said premises by fire until delivery of deed is assumed by the seller to the limit only of amount allowed by the insurance companies. An abstract of title is to be furnished, and five days time allowed for the examination thereof. It is agreed that if the title to the said premises is not good, or cannot be made good within 30 days,

or if the owner does not approve the above sale, this agreement is void, and the earnest money herein receipted for shall be refunded. But if the title to the said premises is good, and the above sale is approved by the owner, and the purchaser neglects or refuses to comply with any of the conditions of this sale within thirty days after the delivery of said abstract to said purchaser, then the earnest money herein receipted for shall be forfeited to Edwin F. James & Co., to the extent of their agreed upon commission, and the residue to the owner of the said premises, and this contract shall thereupon become null and void. The property is to be conveyed by good and sufficient deed of conveyance, free and clear of all liens and encumbrances to date hereof of every nature whatsoever. It is further agreed that Edwin F. James & Co. are to receive $2\frac{1}{2}$ per cent commission on the first $10,000 of purchase price and $1\frac{1}{4}$ per cent commission on the balance of purchase price. Time is the essence of this contract.

"Pioneer Rent & Collection Co., Agents, by Bruskevith.

"I hereby agree to purchase said property on the above terms and pay $35,000 as specified above.

"............... Purchaser."

The complaint further alleges that, after the making of this contract, it was amended by the agreement of the parties so as to provide that lot 5 should be conveyed to appellant Allen and lot 8 to appellant Vallentine, and that the respective grantees should execute to respondents a release from any liability on account of any building on either lot overlapping the other lot. The complaint also alleges that, within the time provided by the contract, appellants made a tender to the respondents of the cash payment, notes, mortgages, and releases named; that respondents refused to convey the property, and that appellants are ready and willing to complete the contract. The answer was a general denial of all the allegations of the complaint except the ownership of the property. Proof showed the facts as follows:

The respondents have owned the two lots in question since 1897. They resided in Helena, Montana, except a part of the time when they resided in Washington, D. C. The Pioneer Rent & Collection Company, a corporation, has been their

local agent in Seattle, caring for the property, collecting rents, and paying taxes, but with no authority to sell or offer the property for sale. W. H. Vincent was secretary, treasurer, and managing officer of that company, and Harry Bruskevith was vice president. Edwin F. James & Company, a corporation, was engaged in the real estate and brokerage business in Seattle. Edwin F. James was its president and W. R. Kelley its secretary. On or about the 26th day of May, 1906, Mr. Kelley, acting for the appellants, went to the office of the Pioneer Rent & Collection Company, and opened negotiations with Mr. Vincent for the purchase of the lots in question. As a result of these negotiations, Mr. Vincent on the same day sent the following telegram to Mr. Carter:

"Seattle, Wash., 5-26-1906.
"Hon. Thomas H. Carter, 1528 16th Street, Washington, D. C.

"Will you accept net $11,500 cash, $5,000 one year, $5,000 two years, $12,000 three years, on or before? Deferred payments 6 interest. For Seventh avenue.

"W. H. Vincent."

Mr. Carter's reply to this telegram was an inquiry as to values. On May 29, 1906, Mr. Vincent sent another telegram to Mr. Carter, as follows:

"Seattle, Washington, May 29, 1906.
"To Hon. Thos. H. Carter, Washington, D. C.

"Best offer obtainable; advise sale, providing first payment increased to fifteen thousand.            W. H. Vincent."

On this same day the contract above set out was executed as therein stated, and $500 was deposited by the Edwin F. James & Company with the Pioneer Rent & Collection Company. Two days later Mr. Carter sent the following telegram:

"May 31st, 1906.
"W. H. Vincent, Care Pioneer Rent & Collection Co., Seattle, Washington:

"Thirty-three thousand five hundred net satisfactory, providing fifteen thousand paid down, instead of eleven thousand five hundred.            Thomas H. Carter."

On the next day Mr. Vincent sent to Mr. Carter the following telegram:

"Seattle, Washington, June 1, 1906.
"Thos. H. Carter, Washington, D. C.

"Have accepted deposit terms your wire yesterday; send abstract.                    W. H. Vincent."

Upon receipt of this telegram Mr. Vincent notified the Edwin F. James & Company that Mr. Carter had accepted the terms of the sale, and asked the names of the purchasers. The names of the appellants were given to Mr. Vincent by Mr. Kelley, who requested that lot 5 be deeded to appellant Allen and lot 8 to appellant Vallentine. Mr. Vincent thereupon prepared the deeds as requested, and also separate notes and mortgages to be executed by the grantees according to the price agreed upon for each lot. On June 4, Mr. Vincent sent a letter to Mr. Carter as follows:

"Seattle, Wash., June 4, 1906.
"Hon. T. H. Carter, Washington, D. C.

"My Dear Sir: In compliance with your telegram accepting our offer $33,500 net to you for your Seventh avenue and Columbia st. property, I herewith enclose you two deeds, a separate deed for each of the two lots, for execution by yourself and Mrs. Carter. I am also enclosing two mortgages to be executed by the purchasers, for you approval, aggregating $17,500 leaving amount of cash due you $16,000 instead of $15,000. The purchase price of this property is $35,000; the taxes for 1905 amount to more than $400; there are some lesser expenses attached which will reduce our commission to less than regular. I believe you have made a good sale at this time. In fact, as I wrote you about a month ago, we were holding the price at $35,000, above the market, because we did not know if you desired to sell. I can place you where your profits will be greater from this time on than they would be by holding the property just sold.
"Yours truly,          W. H. Vincent."

With this letter were inclosed the notes and mortgages proposed to be executed by the appellants, and also deeds as prepared by Mr. Vincent for execution by Mr. Carter and wife.

This letter was the first information which Mr. Carter had of the names of the purchasers and of the fact that the lots were not to be sold to the same person. Respondents executed the deeds and approved the notes and mortgages, and inclosed the same to Mr. Vincent with the following letter:

"Washington, D. C., June 9, 1906.

"Mr. W. H. Vincent, Seattle, Washington.

"Dear Mr. Vincent: I do not know whether the buildings on either lot 5 or 8 extend over the dividing line. It may be possible that some of the improvements on lot 8 while principally on that lot, do extend to lot 5, and *vice versa.* If this be true, it will be necessary to have all these parties sign papers releasing me from all liability in the matter of possession as to such portions as may be covered by overlapping buildings. I would rather not have the trade go through than to get into conflict or litigation with either party over the possession of any portion of the property on the warranty given. Until this matter is thoroughly cleared up or signed up, if conflict exists, do not deliver the deeds.

"Yours very truly."

Upon receipt of this letter, Mr. Vincent informed Mr. James that the deal could not be closed until such releases were executed. On June 22 an abstract of title was delivered to Mr. James, who had the same brought down to date. Certain minor defects were found in the title. The Pioneer Rent & Collection Company undertook to get corrections made, and on July 6, 1906, it was stated that they were unable to get certain affidavits which Mr. James desired. Thereupon Mr. James of Edwin F. James & Company, undertook to get these affidavits himself, and succeeded in getting affidavits which he stated were acceptable to the appellants. On July 9, 1906, Mr. James informed Mr. Vincent that he could not raise all the money to close the deal, and that he was short some $6,000, and offered to pay to Mr. Vincent a bonus of $200 if he would raise the money. Mr. Vincent replied that he "couldn't do anything toward a temporary loan." Mr. Vincent then stated to Mr. James that, if the deal was not closed that day, the deeds would be returned to Mr. Carter.

Mr. James responded that he would be ready to close the deal that day. The deal was not closed on that day, but on July 11, Edwin F. James & Company tendered to Mr. Vincent $17,000 in gold, together with the notes and mortgages and the releases as required by the respondents, which notes and mortgages, etc., were duly executed by the appellants. Mr. Vincent then refused the tender upon the ground that the time had expired and that the tender was made too late. Mr. Vincent thereupon returned the deeds to Mr. Carter who, thinking that the trade was a failure because of the conditions contained in his letter of June 9, 1906, destroyed the deeds. Mr. Carter at that time had no knowledge of any written contract except what was contained in the letters and telegrams which had passed between himself and Mr. Vincent, and he did not receive any payment thereon. This action was begun on August 9, 1906.

These facts are insufficient to base specific performance upon, because they do not show that Mr. Carter authorized the contract sued upon, or that he knew anything about the terms of it until after this action was begun, except such part of it as is contained in the letters and telegrams above quoted. At the time the contract was signed, the Pioneer Rent & Collection Company was not authorized to offer the lots for sale, much less enter into a contract binding upon Mr. Carter. Mr. Carter never knew about this contract, and of course cannot be said to have ratified it. It is true that, a few days later, on May 31, 1906, when he was offered $33,500 for the property, he wired that this amount would be "satisfactory providing $15,000 paid down." In answer to this he was informed by Mr. Vincent: "Have accepted deposit terms your wire." This was not the contract which the two real estate firms had entered into, and it is quite evident that the Pioneer Rent & Collection Company did not desire that Mr. Carter should know the terms of that contract prior to his accepting the offer of $33,500. The telegram of May 31 no doubt authorized the Pioneer Rent & Collection Company to close the

sale upon the offer made and accepted, but this authority was not general. It was limited to the terms of the telegram and such other powers as were necessarily implied. Among these would probably be the right to fix the time within which the sale should be consummated. It certainly did not authorize the Pioneer Rent & Collection Company to bind Mr. Carter by some other contract. The written contract sued on in the complaint and received in evidence shows that the time was limited to thirty days after the delivery of the abstract. This appears to have been signed by the Pioneer Rent & Collection Company, but it was not signed either by Edwin F. James & Company, or by the appellants for whom it is claimed Edwin F. James & Company was acting. They were therefore not bound by it. When Mr. Carter was informed who the purchasers were, he executed deeds as requested, and he approved the security for the deferred payments. But he especially enjoined on his agent not to deliver the deeds until he was relieved of certain liabilities.

Thereafter, when these conditions were complied with and the purchasers were satisfied with the title, and the Pioneer Rent & Collection Company was in possession of the deeds ready to deliver them, the purchasers were informed that the transaction must be closed on July 9, or that the deeds would be returned to Mr. Carter. No objection was made upon the ground that the time was insufficient or that the written contract gave them thirty days after the 22d day of June; but Edwin F. James & Company assented to that demand and stated that the trade would be consummated on that day, thus showing that the parties did not rely upon the written contract which had previously been agreed upon between the two real estate firms. It was not so consummated, and a tender was not made until two days later. Edwin F. James & Company was then informed that the tender was too late, and it clearly was too late, according to the evidence which was undisputed upon this point.

It is also argued that, because neither the Pioneer Rent & Collection Company nor Mr. Carter has returned the $500 de-

posited with the former, this shows a ratification of the original contract. It is true that, after the action was begun, Mr. Carter came on to Seattle and was then for the first time informed of the terms of the contract which the two real estate firms had entered into on May 29, 1906; and it is also true that he did not request that the money should be returned. But this fact cannot be held to be a ratification of that contract by Mr. Carter, because this action was then pending, and the right of the parties became fixed on July 9, when negotiations for the sale were terminated. It does not appear that the appellants or Edwin F. James & Company have ever demanded the return of the $500, or that Mr. Carter received any part of it, or that the Pioneer Rent & Collection Company has ever refused to return the same. There can be no doubt of the liability of the Pioneer Rent & Collection Company to repay the deposit under the facts shown.

A careful reading of the evidence in this case convinces us that Mr. Carter was making his own contract, and that the Pioneer Rent & Collection Company had no authority to make one for him. The transaction was simply conducted through that company, with specific instructions upon each point, and without any knowledge on the part of Mr. Carter of any act not specifically authorized by him by letter or telegram. It also clearly appears that Edwin F. James & Company was fully informed of each direction to the Pioneer Rent & Collection Company by Mr. Carter, and knew the authority of that company. We are of the opinion that the trial court correctly granted the nonsuit, and the judgment is therefore affirmed.

HADLEY, C. J., DUNBAR, and CROW, JJ., concur.

FULLERTON and RUDKIN, JJ., took no part.